**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAB INVESTCO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| VOREIA INDUSTRIES INC., | ) | |
| VOREIA INDUSTRIES USA INC., | ) | |
| and DIVI TREE, INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Tab Investco Inc. ("TII"), for its complaint against Voreia Industries Inc. ("Voreia"), Voreia Industries USA Inc. ("Voreia USA"), and Divi Tree, Inc. ("Divi Tree"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.    This is a civil action seeking damages, injunctive relief and other relief as a result of defendants': (a) trade dress infringement, unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125; (b) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 et seq.; (c) copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et seq.; (d) common law trademark and trade dress infringement, and unfair competition, arising under the laws of the State of Illinois; (e) violation of Uniform Deceptive Trade Practices Act, 815 ILCS 510, et seq.; and (f) violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 515, et seq.

## PARTIES

2.      TII is a Canadian corporation with an address at 2028 Parklane Crescent, Burlington, Ontario, Canada.

3.      Upon information and belief, Voreia is a Canadian corporation with its principal place of business at 5100 South Service Road, Unit 14, Burlington Ontario L7L 6A5, Canada.

4.      Upon information and belief, Voreia USA is a Delaware corporation with its principal place of business at 333 Howard Ave, Des Plaines, Illinois 60018.

5.      Upon information and belief, Divi Tree is a Canadian corporation with its principal place of business at 5100 South Service Road, Unit 14, Burlington, Ontario L7L 6A5, Canada.

6.      Upon information and belief, Voreia, Voreia USA, and Divi Tree are related or affiliated companies with common officers and directors.

7.      Defendants market, distribute, and sell grooming products, writing instruments and other goods, including golf gloves and divot repair tools, and compete directly with TII.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1332, 1338 and/or 1367, and 15 U.S.C. §1121.  Venue is proper in this Court under 28 U.S.C. § 1391.

9.      Defendants market, distribute, and sell grooming products, writing instruments and other goods, including golf gloves and divot repair tools, in the United States and this judicial district, and to consumers in this judicial district (including sales through Amazon).  In addition, defendants operate interactive websites at voreia.ca, knightsbridgeshaving.com, and

greatshotgolfgloves.com accessible to consumers throughout the United States and this judicial district.

10.     This Court has personal jurisdiction over defendants because the claims arise out of the transaction of business and other activities committed by defendants within this District and elsewhere.

## BACKGROUND

11.     On or before August 16, 2007, TII developed the concept of the "Nice Shot" golf glove (the "Nice Shot Golf Glove"). On August 16, 2007, TII filed Canadian App. 1360089 for NICE SHOT on an intent-to-use basis for "sporting goods namely golf gloves, hockey gloves and lacrosse gloves." On October 24, 2007, TII filed US App. 77312574 NICE SHOT on an intent-to-use basis for "Sporting Goods, Namely, Imprinted Novelty Golf Gloves, Hockey Gloves And LaCrosse Gloves."

12.     TII developed the Nice Shot product line, consisting of several versions of the Nice Shot Golf Glove, with the most popular product being the "Bird" glove illustrated below.



13.     Nice Shot Golf Gloves were introduced in the US market in September 2014.

14.     Since at least August 2007, TII has invested significant time and resources in the design, manufacture, advertising, marketing, promotion, endorsement and sale of Nice Shot Golf Gloves, which are sold under the NICE SHOT Trademarks (as defined below).

15.     Among other things, TII has commissioned professional photography of NICE SHOT products utilized in product packaging and promotional materials, met with representatives of The Professional Golfers' Association of America (PGA) to promote the NICE SHOT products, has promoted NICE SHOT gloves at trade shows in the US, and developed a whole range of new NICE SHOT products that have not yet entered the marketplace.

16.     Between September 2014 and December 2018, TII's sales of Nice Shot Golf Gloves grew to become the number one selling golf glove brand on Amazon.com.

17.     In addition to Amazon, Nice Shot Golf Gloves have been sold through websites including niceshotgolf.com, niceshotgolfgloves.com, and niceshotgloves.com, in the US since September 2014.

18.     As a result, TII earned and maintains an excellent reputation in the marketplace, as well as substantial goodwill with TII's customers and potential customers.

19.     TII owns all the rights in and to Nice Shot Golf Gloves and the NICE SHOT trademarks below (the "NICE SHOT Trademarks").

**NICE SHOT**             **NICE SHOT**             

20.     TII is the owner of the following trademark registrations (the "NICE SHOT Trademark Registrations"), including the US registrations attached as **Exhibit A**.

| Jurisdiction | Trademark | Reg. No. | Goods |
|---|---|---|---|
| US | NICE SHOT | 4725708 | Sporting Goods, Namely, Imprinted Novelty Golf Gloves, Hockey Gloves and Lacrosse Gloves (Class 28) |
| US | *NICE SHOT* Golf Gloves | 4837961 | Golf gloves (Class 28) |
| US | *NICE SHOT* | 4837966 | Golf gloves (Class 28) |
| Canada | NICE SHOT | TMA898359 | Golf gloves (Class 28) |
| Canada | *NICE SHOT* | TMA899506 | Golf gloves (Class 28) |
| Canada | *NICE SHOT* Golf Gloves | TMA 899505 | Golf gloves (Class 28) |
| China | NICE SHOT | 16820544 | Golf gloves (Class 28) |
| China | NICE SHOT | 34652818 | Golf gloves, lacrosse gloves, gloves for games, rugby gloves, ball markers, golf tee bags, golf balls, clubhead covers, divot repair tools, balls for playing handball, squash balls, balls for playing racquetball, lacrosse balls, hockey pucks, archery gloves (Class 28) |
| China | *NICE SHOT* | 34652829 | Golf gloves, lacrosse gloves, gloves for games, rugby gloves, ball markers, golf tee bags, golf balls, clubhead covers, divot repair tools, balls for playing handball, squash balls, balls for playing racquetball, lacrosse balls, hockey pucks, archery gloves (Class 28) |
| China | *NICE SHOT* | 34634972 | Golf gloves, lacrosse gloves, gloves for games, rugby gloves, ball markers, golf tee bags, golf balls, clubhead covers, divot repair tools, balls for playing handball, squash balls, balls for playing racquetball, lacrosse balls, hockey pucks, archery gloves (Class 28) |
| EU | NICE SHOT | 012291845 | Clothing, footwear, headgear (Class 25); golf gloves (Class 28) |

| Jurisdiction | Trademark | Reg. No. | Goods |
|---|---|---|---|
| EU | NICE SHOT | 017982186 | Sporting goods, namely, hunting gloves, target shooting gloves, hockey gloves, lacrosse gloves, handball gloves, squash gloves, and racquetball gloves; golf accessories, namely golf tees, golf tee bags, golf balls, clubhead covers, divot repair tools, ball markers; golf balls, balls for playing handball, squash balls, balls for playing racquetball, lacrosse balls, and hockey pucks; sporting goods, namely, golf gloves (Class 28); Online retail store services featuring golf gloves; online retail store services in the field of sporting goods and clothing (Class 35) |

21.     One unique element of the trade dress of Nice Shot Golf Gloves is the placement of one or more of the NICE SHOT Trademarks on the middle finger, or other fingers, of a golf glove. The design for the classic "bird" Nice Shot Golf Glove is depicted in paragraph 12 above and illustrated below.



22.     The trade dress of the Nice Shot Golf Glove is unique and easily identified.

23.     For more than five years, the trade dress of Nice Shot Golf Gloves has been exclusively identified with TII, and embodies TII's goodwill and reputation to its customers, potential customers, and consumers throughout the United States.

24.     Consequently, the trade dress of Nice Shot Golf Gloves has identified, and continues to identify, TII as the source of its Nice Shot Golf Gloves, and has strong secondary meaning to TII's customers, potential customers and consumers.

25.     In addition, TII is the owner of all copyright rights and interests in and to the photographs depicted in the packaging attached as **Exhibit B** (the "Copyrighted Works").

26.     The Copyrighted Works are foreign works created in Canada.

## The Parties' History

27.     TII and Voreia were parties to a distribution agreement ("Agreement") dated January 2, 2017.

28.     Pursuant to the Agreement, Voreia (a) was appointed as the exclusive distributor of the Nice Shot Golf Gloves globally; (b) was granted a non-exclusive right to use the NICE SHOT Trademarks; and (c) agreed to pay TII a royalty of $3.00 US per unit sold (the "Royalty").

29.     TII had the right to terminate the Agreement upon notice to Voreia for Voreia's default in any material respect in the performance of its obligations under the Agreement.

30.     Voreia agreed to use reasonable means to preserve the goodwill and reputation of the NICE SHOT Trademarks; acknowledged TII's right, title and interest in and to the NICE SHOT Trademarks; and agreed that it would not at any time do, or cause or permit to be done any act or things impairing or intending to impair such right, title and interest of TII.

31.     In August 2018, TII and Voreia agreed that the Royalty would be reduced to $1.50 US per unit for all sales from August 1, 2018 through December 31, 2018 and that as of January 1, 2019, the Royalty would return to $3.00 US per unit.

32.     TII terminated the Agreement as of November 7, 2019.

## Infringement by Voreia

33.     During the term of the Agreement, unbeknownst to TII and without TII's authorization or consent, Voreia, Voreia USA and Divi Tree developed and began to market and sell a competing product line, GREAT SHOT.

34.     On June 25, 2019, Divi Tree acquired US Intent-to-Use App. 87262381 GREAT SHOT for divot repair tools from Sandgroup International, Ltd.   The application proceeded to registration on September 10, 2019, under US Registration No. 5857843 (the "Great Shot Registration").

35.     In or about August 2019, Voreia began selling its own golf glove (the "Infringing Glove") in association with the infringing GREAT SHOT mark (the "Infringing Mark"). The Infringing Glove copies the distinguishing features of the Nice Shot Golf Glove, including the placement of the NICE SHOT mark on the middle finger of the glove, as depicted below.

 

36.     The Infringing Glove is a replication of the Nice Shot Golf Glove except for replacing the NICE SHOT Trademarks with the Infringing Trademarks.

37.     On its packaging, Voreia used a photograph of the Nice Shot Golf Glove and superimposed the Infringing Trademark on top of the NICE SHOT Trademarks, as depicted in

**Exhibit C** (the "Infringing Works"). On the packaging, and in other promotional materials, Voreia has also referred to the Infringing Glove as the "birdie" glove and has copied the references on TII's packaging to "AAA Premium Cabretta Leather."

38. From in or about August 2019 until October 2019, Voreia caused the domain www.niceshotgloves.com, including the link to niceshotgloves.com on the Facebook page for Nice Shot Golf Gloves, to automatically redirect to Voreia's website at www.greatshotgolfgloves.com. On the website at www.greatshotgolfgloves.com, the Nice Shot Gloves were listed under a tab marked "Legacy Brands" and the balance of the site promoted the Infringing Glove.

39. In response to an email inquiry from a customer about a Nice Shot Golf Glove, Voreia, using the business name North Shore Apothecary, advised the customer as follows:

> Sorry, we have no further supply of Nice Short Gloves. As we had supplied Nice Shot Gloves in the past, going forward, we will now be supplying Great Shot gloves.

40. In another example, Voreia sent an email to consumers who had purchased Nice Shot Golf Gloves or signed up on the website at niceshotgloves.com to announce *inter alia*:

> We are very excited to bring you a new brand – introducing "Great Shot". We are very excited about this new product range and we want all our loyal customers to have a chance to pick one up.
>
> We have also upgraded our website around Great Shot, which you can access with the same account details used previously.

41. The Infringing Glove is listed for sale on Amazon. An Amazon search for "nice shot golf glove" results in a "sponsored listing" for the Infringing Glove, followed by a top listing for the Infringing Glove, as reflected in attached **Exhibit D**. In addition, an Amazon search for "nice shot" results in a "sponsored listing" followed by a top listing for the Infringing Glove, as reflected in attached **Exhibit E**.

42.     The use of the Infringing Mark, copying of the distinguishing features of the Nice Shot Golf Glove, and communications to customers, both collectively and separately, have resulted in actual confusion, and will likely create confusion in the future by, among other things, suggesting that Voreia's Infringing Glove is from the same source as the Nice Shot Golf Glove or that TII is somehow affiliated with Voreia's Infringing Glove.

43.     In addition, in or about July 2019, Divi Tree began selling a golf divot repair tool (the "Infringing Golf Tool") in association with the Infringing Mark.

**COUNT I**

**FEDERAL TRADE DRESS INFRINGEMENT**

44.     TII realleges paragraphs 1 through 43 above.

45.     Defendants market, promote, offer for sale, and distribute the Infringing Gloves in direct competition with TII throughout the United States.

46.     Defendants have and continue to market, promote, offer for sale, and distribute the Infringing Gloves that imitate and infringe the trade dress of the Nice Shot Golf Gloves.

47.     Defendants designed their Infringing Gloves to imitate and infringe the trade dress of the Nice Shot Golf Gloves, including the use of a confusingly similar mark on the middle finger.

48.     Defendants' infringement of TII's trade dress is causing, has already caused, and is likely in the future to cause confusion, deception and mistake concerning (a) the source and/or origin of the Infringing Gloves, (b) the affiliation, connection, or association between TII and defendants, and (c) TII's sponsorship and/or approval of the Infringing Gloves.

49.     Defendants actions have tarnished and will likely in the future tarnish TII's reputation and damage or destroy the goodwill embodied in TII's trade dress.

50.     The wrongful acts of defendants constitute infringement of trade dress in violation of the Lanham Act, 15 U.S.C. § 1125.

51.     Defendants' use of TII's trade dress was and is intentional or with a reckless disregard for or with willful blindness to TII's rights.  Defendants' acts as alleged herein have been and are being performed with Defendants' knowledge of TII's exclusive rights in the United States to the NICE SHOT trade dress, and with knowledge that Defendants' imitation of TII's trade dress would cause confusion, or cause mistake or deceive, all for Defendants' profit.

52.     Defendants have made, and will make, unlawful gains and profits from their infringement, and TII, due to Defendants' unlawful infringement, has been and is being deprived of goodwill, rights and profits which otherwise would inure to TII.

53.     Defendants have caused and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to TII, and TII is entitled to preliminary and permanent injunctive relief to enjoin Defendants' acts and prevent further violation of its rights. TII has no adequate remedy at law.

54.     In addition, TII has suffered and will continue to suffer damages, including treble damages, in an amount to be proven at trial.

## COUNT II

## FEDERAL TRADEMARK INFRINGEMENT

55.     TII realleges paragraphs 1 through 54 above.

56.     TII is the owner of the NICE SHOT Trademarks and the NICE SHOT Trademark Registrations.

57.     The acts of Defendants alleged herein were done without TII's consent, and constitute a use in commerce and interstate commerce of a reproduction or colorable imitation of

a federally registered mark in connection with the sale and distribution of goods and/or services of Defendants.

58.     Such use by Defendants has caused actual confusion and is likely to cause confusion or mistake, or to deceive.

59.     Defendants' use of the "GREAT SHOT" mark, and the resulting Amazon listings and photographs of TII products, have or are likely to lead the purchasing public to believe that Defendants and/or Defendants products are affiliated or associated with, related to, sponsored by, approved by or connected with TII and/or TII's products, or that some legitimate connection exists between TII, its mark, and products and those of Defendants.

60.     Defendants' conduct permits Defendants to trade on the goodwill that TII has developed over several years and at considerable expense.

61.     Accordingly, Defendants have infringed the trademark rights of TII in violation of the Trademark Laws of the United States, particularly 15 U.S.C. § 1114.

62.     Defendants' use of "GREAT SHOT" was and is intentional or with a reckless disregard for or with willful blindness to TII's rights.  Defendants' acts as alleged herein have been and are being performed with Defendants' knowledge of TII's exclusive rights in the United States to the NICE SHOT mark, and with knowledge that Defendants' imitation of TII's mark would cause confusion, or cause mistake or deceive, in an intentional and willful violation of 15 U.S.C. § 1114(1)(a), all for Defendants' profit.

63.     Defendants, by the acts complained of herein, has caused and is causing injury to TII, the public and the markets in which TII and Defendants do business.

64.     Defendants has made, and will make, unlawful gains and profits from its infringement, and TII, due to Defendants' unlawful infringement, has been and is being deprived of goodwill, rights and profits which otherwise would inure to TII.

65.     Defendants have caused and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to TII, and TII is entitled to preliminary and permanent injunctive relief to enjoin Defendants' acts and prevent further violation of its rights. TII has no adequate remedy at law.

66.     In addition, TII has suffered and will continue to suffer damages, including treble damages, in an amount to be proven at trial.

## COUNT III

## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

67.     TII realleges paragraphs 1 through 66 above.

68.     Defendants have deliberately and willfully used trademarks and trade dress which are confusingly similar to the NICE SHOT Trademarks and trade dress in an attempt to trade on the long-standing and hard-earned goodwill, reputation and selling power established by TII in connection with its Nice Shot Golf Gloves in the United States, and to confuse consumers as to the origin and sponsorship of Defendants' goods.

69.     Defendants' unauthorized and tortious conduct has also deprived, and will continue to deprive, TII of the ability to control the consumer perception of its goods marketed under its NICE SHOT Trademarks and trade dress, placing the valuable reputation and goodwill of TII in the hands of Defendants, over whom TII has no control.

70.     Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with TII, and as to the origin, sponsorship or

approval of Defendants and their goods, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

71.     In addition, Defendant' willful use of the mark in the United States, despite having knowledge of TII's priority and rights in its NICE SHOT Trademarks and trade dress, demonstrates Defendants' intent to disassociate the family of NICE SHOT Trademarks and trade dress with their rightful owner and registrant (TII), and to diminish or destroy the goodwill TII has developed with respect to its family of marks.

72.     The intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a).

73.     As a result of Defendant's aforementioned conduct, TII has suffered and continues to suffer substantial damage and irreparable harm constituting an injury for which TII has no adequate remedy at law.  Accordingly, an injunction from this Court is necessary to prevent TII from further irreparable harm.

74.     In addition, TII has suffered and will continue to suffer damages, including treble damages, in an amount to be proven at trial.

## COUNT IV

## <u>COPYRIGHT INFRINGEMENT</u>

75.     TII realleges paragraphs 1 through 74 above.

76.     TII owns the copyrights in all Copyrighted Works.

77.     Defendants had access to the Copyrighted Works.

78.     Defendants copied the Copyrighted Works, and modified the Copyrighted Works for use with defendants' packaging.

79.     Defendants did not have permission to copy the Copyrighted Works.

80.     Accordingly, defendants have been and are engaged in copyright infringement in violation of 17 USC § 501(a) by manufacturing, importing, distributing, advertising and selling packaging that are substantially similar copies of the Copyrighted Works.

81.     Upon information and belief, the copying was willful and deliberate and in complete disregard of TII's rights.

82.     TII has suffered actual damages due to defendants' copying in an amount to be proven at trial.

83.     TII is entitled to reasonable attorneys' fees and costs under 17 USC § 505.

84.     TII is entitled to equitable relief, including preliminary and permanent injunctions, under 17 U.S.C. § 502, and the impoundment of infringing copies under 17 U.S.C. § 503. TII has no adequate remedy at law.

**COUNT V**

**<u>COMMON LAW TRADEMARK INFRINGEMENT</u>**

85.     TII realleges paragraphs 1 through 84 above.

86.     The NICE SHOT Trademarks are inherently distinctive, or in the alternative, have acquired secondary meaning, in the minds of the public as indicating the origin of the TII's goods.

87.     The acts of defendants as described above constitute common law trademark infringement.

88.     As a result of such conduct, TII has suffered and, unless such acts and practices are enjoined by this Court, will continue to suffer damage to its business, reputation and goodwill. Plaintiff has no adequate remedy at law.

89.     In addition, TII has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT VI

### COMMON LAW TRADE DRESS INFRINGEMENT

90.     TII realleges paragraphs 1 through 89 above.

91.     The trade dress of the Nice Shot Golf Gloves is inherently distinctive and has acquired secondary meaning, in the minds of the public as indicating the origin of the TII's goods.

92.     The acts of defendants as described above constitute common law trade dress infringement.

93.     As a result of such conduct, TII has suffered and, unless such acts and practices are enjoined by this Court, will continue to suffer damage to its business, reputation and goodwill. Plaintiff has no adequate remedy at law.

94.     In addition, TII has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT VII

### COMMON LAW UNFAIR COMPETITION

95.     TII realleges paragraphs 1 through 94 above.

96.     TII and Defendants are competitors in the marketplace for golf gloves.

97.     As alleged above, among other things, Defendants have unlawfully copied and used TII's NICE SHOT Trademarks, trade dress, product imagery and product packaging, and violated the rules of the marketplace in which the parties' sell their respective goods, to usurp consumer sales properly belonging to TII, all to TII's detriment.

98.     Through its actions, defendants have, in bad faith, misappropriated a commercial advantage belonging to TII.

99.     TII has been proximately damaged in an amount to be proven at trial.

## COUNT VIII

## CANCELLATION OF U.S. REGISTRATION

100.    TII realleges paragraphs 1 through 99 above.

101.    The Great Shot Registration should be canceled based on priority and because of a likelihood of confusion with Plaintiff's NICE SHOT Trademarks for golf-related goods, pursuant to 15 U.S.C. §1119.

## COUNT IX

## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510)

102.    TII realleges paragraphs 1 through 101 above.

103.    At all relevant times of the allegations made in this Complaint, the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*) was in effect in Illinois.

104.    Defendants' unauthorized use of TII's NICE SHOT Trademarks has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion or of understanding as to the source, sponsorship, approval and/or certification of the Infringing Gloves.

105.    Such knowing and willful conduct described above constitutes deceptive trade practices within the meaning of the Illinois Deceptive Trade Practices Act (815 ILCS 510/2).  As a result of such conduct, TII has suffered and will continue to suffer immediate and irreparable harm to its goodwill and reputation, for which TII lacks an adequate remedy at law.

106.     In addition to the irreparable harm to TII caused by reason of Defendants' acts, TII has suffered and will continue to suffer monetary damages in an amount not yet determined.

107.     TII is entitled to entry of permanent injunctive relief prohibiting Defendants from unauthorized use of the NICE SHOT Trademarks covered by TII's registrations in violation of the Illinois Uniform Deceptive Trade Practices Act.

108.     Defendants' willful conduct entitles TII to recovery of its costs and attorneys' fees.

## COUNT X

## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505)

109.     TII realleges paragraphs 1 through 108 above.

110.     At all relevant times of the allegations made in this Complaint, the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*) was in effect in Illinois.

111.     Defendants' unauthorized use of TII's NICE SHOT Trademarks has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion or of understanding as to the source, sponsorship, approval and/or certification of the Infringing Gloves.

112.     Such knowing and willful conduct described above constitutes deceptive business practices within the meaning of the Illinois Deceptive Trade Practices Act (815 ILCS 505).  As a result of such conduct, TII has suffered and will continue to suffer immediate and irreparable harm to its goodwill and reputation, for which TII lacks an adequate remedy at law.

113.     In addition to the irreparable harm to TII caused by reason of Defendants' acts, TII has suffered and will continue to suffer monetary damages in an amount not yet determined.

114.     TII is entitled to entry of permanent injunctive relief prohibiting Defendants from unauthorized use of the NICE SHOT Trademarks in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

115.     Defendants' willful conduct and reckless indifference toward TII's rights entitles TII to a recovery of costs, attorneys' fees and punitive damages pursuant to 815 ILCS 505/10a.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), TII demands a trial by jury of all issues triable of right by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, TII respectfully requests that this Court enter judgment in its favor and against defendants and grant relief as follows:

A.     That the Court enter judgment against defendants and in favor of TII with respect to all relief requested in this complaint;

B.     That the Court declare that defendants and their licensees, distributors, affiliates and all others using the Infringing Mark and/or the Infringing Glove and/or Infringing Golf Tool and/or Infringing Works have infringed and continue to infringe TII's valuable intellectual property rights;

C.     That the Court enjoin permanently, and during the pendency of this action, defendants and their licensees, distributors, affiliates, agents, directors, officers, employees and all others acting in concert or participation with defendants from taking any further action in violation of the rights of TII, including but not limited to (i) using the Infringing Mark and/or the

Infringing Glove and/or Infringing Golf Tool and any other trademark, trade dress or design confusingly similar to TII's trademarks, trade dress or design, or any colorable imitation thereof, in connection with any sale or offer to sell, in connection with any goods or services, or in any other manner which infringes, dilutes, tarnishes or otherwise violates TII's rights or those of its affiliates; (ii) manufacturing, importing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any copies of the Infringing Works, Copyrighted Works or any reproductions, derivative works or colorable imitations thereof, and (iii) imitating, copying or making unauthorized use of the Copyrighted Works;

D. That the Court enjoin permanently, and during the pendency of this action, defendants and their licensees, distributors, affiliates, agents, directors, officers, employees and all others acting in concert or participation with defendants from committing any act calculated or likely to cause the public or trade to believe that defendants or their goods, services or commercial activities are in any manner connected, affiliated or associated with, or sponsored by TII; from using in any manner any promotional material or other material related to defendants' products bearing the Infringing Mark, TII's trade dress or any other confusingly similar mark, trade dress or design; and from otherwise unfairly competing with TII or from infringing, diluting or otherwise violating TII's rights;

E. That the Court order that the defendants be required to deliver up to TII for destruction any and all Infringing Gloves, Infringing Golf Tools, Infringing Works, and other products, goods, promotional materials, domain names and other materials and documents bearing the Infringing Mark, the Copyrighted Works, or any other mark confusingly similar to the Nice Shot Golf Gloves, the NICE SHOT Trademarks, TII's trade dress or otherwise identifying the defendants as affiliated in any way with TII;

F.     That the Court require defendants, within thirty days after service of notice of entry of judgment or issuance of an injunction in this action, to file with the Court and serve upon TII's counsel a written report under oath setting forth details of the manner in which defendants have complied with the Court's order pursuant to paragraphs C, D and E above;

G.     That the Court require defendants to account for and pay over to TII all damages sustained by TII and all profits realized through defendants' unlawful acts, including but not limited to defendants' profits, plaintiff's lost profits, damage to TII's goodwill, and ordering that the amount of damages awarded TII be increased three times the amount thereof;

H.     That the Court award TII its costs and disbursements, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117, 15 U.S.C. § 505; 815 ILCS 510 and/or 815 ILS 505.

I.     That the Court cancel Divi Tree's United States Trademark Reg. No. 5857843 for GREAT SHOT;

J.     That the Court direct that the domain name niceshotgloves.com, and all other domain names owned by defendants which include any NICE SHOT Trademark or other TII trademark or portion thereof, be transferred to TII; and

K.     That the Court grant such other and further relief as the Court deems appropriate.

Dated:  November 22, 2019                          Respectfully submitted,

By:   s/ William J. Lenz
      One of the Attorneys for Plaintiff
      TAB INVESTCO INC.

      William J. Lenz
      Olivia L. Bedi
      Neal, Gerber & Eisenberg LLP
      Two North LaSalle Street
      Suite 1700
      Chicago, Illinois 60602-3801
      (312) 269-8000

8293313_2

wlenz@nge.com
obedi@nge.com

Michael J. Berchou
HARTER SECREST & EMERY LLP
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202
(716) 853-1616
mberchou@hselaw.com